W. J. HARDIN v. R. O. LEDBETTER.

*Judge's Charge— Contributory Negligence—Streams and Ponds, Rights of Upper and Lower Proprietors.*

1. If improper evidence is admitted after objection, but the ill effect which it might have is obviated by the Judge's charge, a new trial will not be ordered in this Court.

2. H. had a mill on a stream, and L. had a mill lower down on the same stream; both had dams across the stream. H. took out his dam, which caused the accumulated mud, &c., in his pond to fill up L.'s pond to such an extent as to back the water to the injury of H. L. was notified by H. to raise his flood-gates, so as to let the

mud pass through when H.'s dam was removed, but L. refused to do so: *Held*, that H. could recover damages from L. caused by the back water, but L. could not recover for damages suffered by the filling up of his pond, because his refusal to open his flood-gates made him guilty of contributory negligence.

3. No instruction, terminating in telling the jury the plaintiff cannot recover, is in form to meet the issues of fact, nor should it be given.

CIVIL ACTION, tried before *MacRae, J.*, at Fall Term, 1887, of RUTHERFORD Superior Court.

There was a verdict and judgment for the plaintiff. The defendant appealed.

The facts are fully stated in the opinion.

*Mr. W. P. Bynum*, for the plaintiff.
*Messrs. Battle & Mordecai*, for the defendant.

SMITH, C. J. This, suit begun on April 21, 1885, is prosecuted by the plaintiff, for the recovery of damages sustained in working his water mill upon Holland's Creek, by the ponding of the water back upon his wheel by the defendant, who owns and operates a similar mill below, and on the same stream.

Upon the trial, issues were submitted to the jury, which, with the findings thereon, under the direction of the Court, are as follows:

1. "Is the plaintiff endamaged by the defendant's ponding water back on his water-wheel?" "Yes."

2. "What amount of annual damage is the plaintiff entitled to recover?" "One hundred dollars."

3. "Is the defendant damaged by the wrongful act of the plaintiff, as alleged in the counter-claim, and if so, how much?" "No."

The general facts of the case out of which the controversy grows, may be summarily and sufficiently stated, to render

intelligible the ruling and the exceptions thereto presented in the appeal, without a tedious repetition of the testimony in detail.

The defendant owns and operates a public mill on the creek, below that of the plaintiff, and the complaint is, that his dam ponds the water back upon the water-wheel of the plaintiff, so as largely to interfere with its power and driving capacity. The plaintiff at first used a wheel of 18 feet diameter, which, to obviate in some degree the difficulty, he reduced in size by two feet. He had also constructed two dams, which, for the same purpose, he removed, and tapped the creek at a point higher up, and brought the water thence down to his wheel, an overshot wheel, thereby giving it increased power to do the work. In consequence of the large volume of water descending after the removal of the plaintiff's dams, carrying with it the accumulated mud, sand, and rubbish above, the defendant's pond became filled therewith to a degree that the raised water in defendant's pond interfered, as before, with the working capacity of plaintiff's mill, for the injurious consequences whereof, in the loss of patronage, the present suit is brought.

It appears that there is a waste-gate way on the defendant's dam, which, by opening, would let pass the mud and sand, and was so permitted to be used by a former owner, from whom the defendant obtained the property. The plaintiff demanded that the defendant should allow the opening of this outlet for the accumulated dirt, which was refused, the defendant saying that if he did so he would expose himself to a claim for damages from proprietors below him, and he demanded compensation for the injury to his lands from the mud deposit formed in his pond.

There was much testimony offered upon these controverted matters, and upon the extent of the injury in the value of the plaintiff's property, and from its crippled condition and inability to do its former work.

This brief statement of the case will suffice for a proper understanding of the exceptions taken during the progress of the examination of the witnesses, of the defendant's prayer for instructions, and the instructions under which the jury arrived at their verdict.

The instructions asked are as follows:

1. If the jury shall find that the plaintiff is injured by the ponding back of water on his wheel, and the injury results from the concurring acts of each, and proceeds from his tearing down of his dams, as the immediate and proximate cause of his damage, he is not entitled to recover.

2. That if the jury find that the plaintiff's mill-pond was from one and a half to two miles long, and contained accumulations of mud and sand deposited during twenty-five or more years, and the dams were removed during the limited time mentioned by the witnesses, this would be contributory negligence, and a bar to plaintiff's recovery.

3. That the plaintiff was under legal obligation to use such care and prudence in removing his dams as not to cause the overflow of the banks below; and if done in such manner as to fill up and close the natural channel of the creek, it would be contributory negligence, depriving him of any right of action for resultant injury.

4. That plaintiff is only entitled to the natural flow and fall of the creek for drainage, and if, in tearing down his dam, an unusual discharge of mud and sand was precipitated, from which the damage proceeded, he cannot recover.

5. That defendant, having a right to maintain his own dam, unless he thereby ponded the water, and if no injury would have followed but for plaintiff's removal of his own dam, he cannot recover.

6. That the recovery, if any, should be measured by the toll lost in consequence of plaintiff's inability to earn it, by reason of his being compelled to diminish the size of his water-wheel.

7. That his recovery should be limited to the impairment in value of his mill.

8. That if no such loss occurred, plaintiff has suffered no damage, and there is no evidence of such loss.

The Court, after presenting the contending claims of the parties, each charging the other with causing damage, proceeded to charge as follows:

"Is the plaintiff endamaged by the defendant ponding water back on plaintiff's water-wheel?

"There is no question here about any claimed right of prescription or otherwise, on the part of the defendant, to pond his water as far back as plaintiff's wheel. He says he does not do it, but, if done at all, it is done by plaintiff's own act. To reach the truth and justice of the matter, it is necessary for us to consider what the rights of each party are in the premises. These parties, being upper and lower proprietors of the land on Holland's Creek, are each entitled to make such use of the water, as. it passes through his land, as he may choose, and then let it pass on to the use of those below, but he must so use it as not to injure another. The defendant has no right to hold such an amount of water as will pond back upon the plaintiff, and if, by defendant's act, the water is caused to so pond back upon plaintiff's wheel, the plaintiff is damaged thereby; but if the ponding back is caused by the *wrongful* act of the plaintiff himself, he cannot be said to be injured by the defendant; and if the plaintiff's act is wrongful, and concurs with a wrongful act on the part of defendant, and both the acts together produced the injury, it cannot be said to have been done by the defendant. What will amount to a wrongful act on the part of the plaintiff? If he has a mill and keeps up a dam, after his pond is filled the water must be permitted to flow on in its natural and ordinary course—not to withhold from below the usual flow, nor to force upon the lower proprietor a greater flow than usual, as far as this can be done consistently with the carrying on of the ordinary business of his mill.

"There is no law that requires one who has a mill to continue in the business. He may take down his dam, provided he does so in such a gradual way as not to inject at one time a larger body of water, or what the water carries with it in its natural flow, upon the lower proprietor, to his injury. If, however, he takes the proper precaution, and, in taking away his dam, makes the flow so gradual that the lower proprietor can reasonably take care of his own property and avoid injury by opening his flood-gates, or otherwise, his act is not wrongful, and it is the duty of the defendant to take such precautions on his part that he shall not, by keeping his dam closed, or by failure to make any other provisions, permit the sand and mud to accumulate in his pond, and so prevent the usual and ordinary flow of the stream by plaintiff's mill, and pond water back on plaintiff's wheel. And, if plaintiff used the precautions I have described as necessary to be done by him, and if it was by the act or refusal to act of defendant that the water was ponded back, and if you find that it was ponded back on plaintiff's wheel, you will respond to the first issue, 'Yes.'

"If the plaintiff was in fault, and caused the water, sand, mud and trash to be forced upon the defendant's dam, or into his pond, or caused the sand to accumulate near his own mill, when, by proper precaution, he might have avoided this result, he cannot be said to have been injured by the defendant; you should answer, 'No.'

"You have heard the testimony on both sides as to the manner in which the plaintiff's dam was opened, and it is for you to say whether he did use all necessary precaution to avoid injury to his neighbor below. If you say 'Yes' to the first issue, you will consider the next: what amount of annual damage is plaintiff entitled to recover thereby—that is, under the statute, what are his annual damages? What is the average yearly damage? It would not be fair for you to measure his damage by the capacity of his machinery,

before and after the injury; but you must consider, in general, the loss of capacity, the amount of business generally done, the loss of business, if any, by the loss of the capacity to do business occasioned by the injury, and ascertain what would be a fair assessment of each year's damage, from one year before the action up to the time of the trial, on an average yearly loss.

"The action was brought to Spring Term, 1885. So you can, if you find any damages, go back and consider what is the average damage for about three years, which will bring you up to the time of the trial. You are to give damages in gross for all the time; but the yearly damage you may average at so much a year, or you may say how much for 1885, how much for 1886, how much for 1887, up to this date. If, however, you have responded 'No' to the first issue, you will respond to the second issue 'None', and proceed to the third and last issue."

The charge upon the third issue is omitted, as unnecessary for the proper presentation of the case.

Defendant excepted to the failure of the Court to give the instructions asked by him, and to the instructions as given.

The jury responded to the first issue, "Yes." Second issue, "$100." Third issue, "No."

Rule for new trial, &c.

The exceptions to the rulings upon evidence are these:

The plaintiff, among other things, testified that the value of his mill some eight years ago, before the action, and after he had put in a new 18-foot wheel, the same size of the old one, was $4,000 or $5,000, and it is not now more than half what it was at the start; it will not do more than half the grinding.

Defendant objected to the testimony as to the value of the mill, and suggested that the question should be as to the capacity of the mill.

*First Exception.*—Objection overruled, and defendant excepted.

Plaintiff being asked as to the capacity of his mill before the ponding back, said it would then grind from seventy-five to eighty bushels of grain, and would gin four or five bales of cotton a day.

*Second Exception*—Defendant objected. Objection overruled. Defendant excepted.

Plaintiff further testified that he had ground about 12,000 bushels of grain, and ginned, on an average, about 75 bales of cotton a year, and that now he did not grind more than 6,000 bushels of grain a year, and gin about 40 bales of cotton, on account of the loss of power.

Objected to by defendant. Overruled, and defendant excepted.

*Third Exception.*—Plaintiff further testified that he went to see defendant about the water, and told him that it was backing on his (plaintiff's) wheel, and injuring plaintiff, and he would like for defendant to draw his flood-gates and let off his water, and let the mud and saw-dust, &c., which had accumulated in his pond, pass through; that that had been the rule heretofore with plaintiff and Whitesides, the former owner of defendant's mill—that the flood-gates were to be opened and the water drawn off occasionally; that defendant said he could not do anything of that kind; that plaintiff told defendant that he had better cut a race, like plaintiff had done, and run his mill by the race instead of the pond. Defendant said it would cost him $300 or $400, and he could not afford it. Plaintiff told him that he (plaintiff) would cut it for $100, and guarantee that it would not stop his mill two hours; and that unless something was done to relieve him, plaintiff would have to sue. Defendant said that if plaintiff wanted to put it in law, to go ahead—he could stand it if plaintiff could.

To all this conversation with defendant, defendant objected. Objection overruled. Defendant excepted.

103—7

*Fourth Exception*—Plaintiff further testified that Whitesides, the former owner of the mill now owned by defendant, would raise the flood-gates occasionally to let the water and mud and sand out, and it would relieve plaintiff's wheel.

Defendant objected to the testimony as to what Whitesides did. Objection overruled. Defendant excepted.

*Fifth Exception.*—Plaintiff further testified that the pond was filling up gradually all the time while Whitesides owned it, but not so rapidly as it had since defendant owned it, on account of the occasional opening of the gates by Whitesides.

Defendant objected; overruled. Plaintiff excepted.

*Sixth Exception.*—D. O. Hardin, a witness for the plaintiff, testified that when plaintiff repaired the mill and put in a new 18-foot wheel, the capacity of the mill was about seventy-six bushels of grain per day.

Objected to by defendant; overruled. Defendant excepted.

*Seventh Exception.*—John Hardin testified that the capacity of the plaintiff's mill, before the ponding back upon the wheel, was about seventy-five bushels of grain per day.

Objected to by defendant; overruled. Defendant excepted.

*Eighth Exception*—David Houser testified for plaintiff that there was considerable difference in power with the 16-foot wheel instead of the 18-foot wheel. Witness never saw the 18-foot wheel tried, but the change to the 16-foot wheel would injure the value of the mill.

*Ninth Exception.*—Defendant objected; overruled. Defendant excepted.

The objection to the testimony embraced in the two first exceptions, if possessed of force, is obviated by the rule for assessing damages laid down by the Court, and, as relating to the extent of the capacity of the mill and its operations, in connection with their impairment for want of waterpower, the testimony was pertinent and proper, and, at

least, rendered so, in the effect given to it by the Judge in his charge to the jury.

Without specifying the other exceptions to the testimony admitted, a single general answer will dispose of them all. The testimony shows that Whitesides, a former proprietor, would, when owner, raise the flood-gates occasionally and let the mud pass out of his pond with the water, and thus relieve the plaintiff's wheel, and this was communicated to defendant, with a request that he should do the same; that the pond was now filling up faster than before, because of the shutting down of the waste-water gates. The other evidence objected to was of the kind mentioned in the first two exceptions. In our opinion the evidence all bore upon the subject-matter of controversy, and was competent.

We think the law was correctly laid down by the Court in the charge to the jury, and fully meets all the just demands of appellant.

The facts were few and simple. The plaintiff had an undoubted right to make the improvement, by taking the water of the creek at a higher point, and, in order thereto, to take away his own dams. The damage from the descended mud and water arose from the stoppage by the defendant, and this could have been avoided by the opening of his flood-gates. His refusal to do this was the cause of the back flow, and he was, consequently, alone in fault. It was not a case of concurring negligence, but the negligence, if of any one, of the defendant alone. The principle underlying and regulating the relations of adjoining owners of water-power, on the same stream, is very concisely and briefly set out in the directions given the jury, and is embraced in the Latin sentence, *Sic utere two ut alienum non lædas.*

The defendant, if he could do so, without self-injury, should not needlessly have obstructed the passing of the mud and sand, that entered his own pond, out of it into the current below. We see no error, and affirm the judg-

ment. We have noticed only the case made out by the Judge, but we repeat the remark, so often made, that no instruction terminating in telling the jury the plaintiff cannot recover, is in form to meet the issues of fact, nor should be given.

No error.                                        Affirmed.